UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DANIEL JACKSON,

    Plaintiff,

v.                                              Case No: 2:14-cv-717-FtM-38MRM

ALLSTATE PROPERTY AND
CASUALTY INSURANCE
COMPANY,

    Defendant.
_____/

## ORDER[1]

This matter comes before the Court on Defendant Allstate Property and Casualty Insurance Company's Amended Motion for Summary Judgment (Doc. #65) filed on February 5, 2016. Plaintiff Daniel Jackson filed an Opposition to Defendant's Motion for Summary Judgment (Doc. #67) on February 22, 2016. Defendant's motion is thus ripe for review.

## BACKGROUND

Plaintiff brought this breach of contract suit to recover underinsured motorist ("UIM") benefits under an automobile insurance policy issued by Defendant. (Doc. #42). On June 8, 2011, Plaintiff was involved in a fender-bender accident in which he claims to have been injured. (Doc. #42). An ambulance took Plaintiff to Cape Coral Hospital where he was examined and released for follow-up examinations by his physicians. (Doc. #65-

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

1 at 98, 112). Thereafter, Plaintiff received chiropractic treatment from Dr. Mark C. Means. (Doc. #65-1 at 74-91, 114-16).

Plaintiff has an extensive medical history that spans before and after the auto accident. (Doc. #64 at 7-8; Doc. #65 at 1). Pertinent to this suit, about four weeks before the accident, Dr. John S. Sarzier, a neurosurgeon, surgically implanted a spinal cord stimulator into Plaintiff's lower back to help control his chronic pain. (Doc. #65 at ¶ 8; Doc. #67 at 1). The stimulator's settings were being adjusted at the time of the accident. (Doc. #65 at ¶¶ 9-10; Doc. #67 at 1).

Dr. Sarzier also performed two surgeries on Plaintiff after the accident. The first occurred on October 7, 2011, roughly four months after the accident, when Dr. Sarzier implanted a second stimulator into Plaintiff in order to provide him renewed relief on the right side of his body. (Doc. #63-1 at 18:18-19:2). Two years later, Dr. Sarzier performed neck surgery on Plaintiff. (Doc. #63-1 at 22:22-23:13).

As previously stated, Defendant issued the applicable insurance policy that is the subject of this case. That policy included underinsured motorist coverage:

> [w]e will pay only those damages which an insured person is legally entitled to recover from the owner or operator of an uninsured auto because of bodily injury sustained by an insured person, except that we will not pay for damages consisting of pain, suffering, mental anguish, or inconvenience unless the injury or disease is described in one or more paragraphs (a) through (d) of Florida Statute 627.737(2). The bodily injury must be caused by accident and arise out of the ownership, maintenance or use of an uninsured auto. We will not pay any punitive or exemplary damages.

(Doc. #65-1 at 47 (emphasis removed)).

On April 16, 2012, Plaintiff settled with the at-fault driver for $10,000. (Doc. #65-1 at 72). At some point thereafter, Plaintiff made a claim for underinsured motorist benefits with Defendant that was denied. Plaintiff subsequently sued Defendant in the Circuit

Court of the Twentieth Judicial Circuit in and for Lee County, Florida.  (Doc. #2; Doc. #42).  The case was removed to this Court.  (Doc. #1; Doc. #22).

Plaintiff claims that Defendant breached the insurance contract by "failing and/or refusing to make full and timely payments due Plaintiff under said policy for said losses."  (Doc. #42 at ¶ 9).  He alleges "bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition."  (Doc. #42 at ¶ 11).  Plaintiff also asserts that his losses are permanent and that he will suffer losses in the future.  (Doc. #42 at ¶ 11).

In response to this suit, Defendant asserts several affirmative defenses:

- any award should be reduced by the amounts paid or payable by collateral source providers as defined by Florida Statutes 768.76 and 627.736;
- Plaintiff's damages for any past medical expenses are limited to those amounts actually paid or personally owed by Plaintiff to his health care providers and/or lien holders and not the total amount billed by the providers and/or lien holders;
- entitlement to all provisions of the Florida Motor Vehicle No-Fault Law, including set-off, collateral sources of payment and threshold injury;
- any liability is limited to the insurance provisions and Florida State 627.727, et seq.; and
- all benefits for medical payment coverage and personal injury payment coverage have been paid in full to or on behalf of Plaintiff.

(Doc. #46 at 2).  Now that the discovery period has closed, Defendant moves for summary judgment.  (Doc. #65).

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure governs a motion for summary judgment. Under that rule, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is genuinely in dispute "if the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party moving for summary judgment bears the initial burden of showing that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue, and the failure to meet this burden warrants denial of the motion. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party meets this burden, the opposing party must show that there is a material dispute of fact for trial. *See id.* at 324; *Anderson*, 477 U.S. at 250. In rebuttal, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson*, 477 U.S. at 252 (stating "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff").

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the nonmoving party. *See Anderson*, 477 U.S. at 255 (citation omitted); *Tana v. Dantanna's*, 611 F.3d 767, 772 (11th Cir. 2010).

The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party.  See *Anderson*, 477 U.S. at 250.

With these standards in mind, the Court turns to Defendant's motion for summary judgment.  (Doc. #65).

## DISCUSSION

Plaintiff seeks to recover, among other things, past medical expenses, future medical expenses, and pain and suffering.  Defendant argues that it is entitled to judgment as a matter of law because Plaintiff cannot carry his burden of proof as to such damages.  (Doc. #65 at 1).  The Court will address each damages category in turn.

**A.  Past medical expenses**

Defendant maintains it never breached the insurance contract by denying Plaintiff UIM benefits because there were no recoverable past medical expenses in excess of the available set-offs.  Defendant's argument relies on Florida's statutory collateral source rule:

> [i]n any action to which this part applies *in which liability is admitted or is determined by the trier of fact* and in which damages are awarded to compensate the claimant for losses sustained, the court shall reduce the amount of such award by the total of all amounts which have been paid for the benefit of the claimant, or which are otherwise available to the claimant, from all collateral sources; however, there shall be no reduction for collateral sources for which a subrogation or reimbursement right exists. Such reduction shall be offset to the extent of any amount which has been paid, contributed, or forfeited by, or on behalf of, the claimant or members of the claimant's immediate family to secure her or his right to any collateral source benefit which the claimant is receiving as a result of her or his injury.

Fla. Stat. § 768.76(1) (emphasis added).² "This statutory modification was intended to reduce insurance costs and prevent plaintiffs from receiving windfalls." *Joerg v. State Farm Mut. Auto. Ins. Co.*, 176 So. 3d 1247, 1249 (Fla. 2015) (citation omitted).

Defendant's reliance on the collateral source rule at the summary judgment stage is misguided. As the Court sees it, Defendant has neither admitted liability for breaching the applicable insurance contract nor has this case been determined by a trier of fact. This means that the statutory prerequisites to entertain set-offs has not yet been satisfied. Defendant also presents no authority for such set-offs being decided at the summary judgment stage. Simply put, Defendant's set-off argument is premature based on the record before the Court. *See Lawton-Davis v. State Farm Mut. Auto. Ins. Co.*, No. 6:14-cv-1157-ORL-37DAB, 2016 WL 1383015, at *3 (M.D. Fla. Apr. 7, 2016) (stating, "[p]ursuant to *Goble v. Frohman*, 901 So. 2d 830, 833 (Fla. 2005), after trial, the [c]ourt will reduce any amounts paid by collateral sources or discounted as a result of a contract for which no right of subrogation or reimbursement exists"); *Primo v. State Farm Mutual Auto. Ins. Co.*, No. 3:13-cv-64-J-32MCR, 2014 WL 6769344, at *1-3 (M.D. Fla. Dec. 1, 2014) (determining defendant's entitlement to any setoff from the jury award for payments made by collateral sources in an underinsured motorist coverage case). Accordingly, the Court denies Defendant's motion for summary judgment as to past medical expenses.

## B. Future medical expenses

Next, Defendant moves for summary judgment on the ground that Plaintiff has not met his burden of establishing future medical expenses as a result of the accident. (Doc.

---

² In Defendant's motion for summary judgment, it cites Florida Statute "§ 768.26" for the collateral source rule. This appears to be a scrivener's error because § 768.26 addresses attorneys' fees and litigation expenses for survivors of an estate in a negligence suit. *See* Fla. Stat. § 768.26.

#65 at 8-9). Plaintiff offers Dr. Means to support his claim for such damages.[3] According to Defendant, however, Dr. Means offers a scant opinion that lacks details necessary to award future medical expenses. (Doc. #65 at 9).

Plaintiffs responds, albeit fleetingly, that there is a genuine issue of material fact as to future medical expenses. Despite the brevity of Plaintiff's response, the Court agrees that the issue of future medical expenses is a matter for the jury to decide.

In a letter dated December 13, 2011, Dr. Means states,

> [a]lthough I do feel that Plaintiff has reached his maximum medical improvement ["MMI"] resulting to this injury, I am hesitant in using that terminology. Historically speaking, when someone has reached their MMI status, it is typically meant that no further care is needed if no further improvement is expected. Such, definitely, is not the case with [Plaintiff]. As stated above, the chiropractic adjustments do minimize the exacerbation. He stated that it makes them tolerable. I do anticipate that there will be a decrease in the frequency of his visits in the future. However, I will be continuing to see him on a once a week basis for at least the next four to eight weeks. Hopefully I will then be able to decrease the frequency to about twice a month basis.
>
> Because of the damages that were done, there is a strong probability of increased premature arthritic changes occurring in his spine as a result of these injuries. This would obviously cause a worsening of his condition as he gets older and affect him as he gets older. He has seen his other medical physician, including the neurosurgeon, and no other recommendations or course of care has been offered by them. Because of this, continued chiropractic care is essential and necessary.

(Doc. #65-1 at 116). In an affidavit dated February 16, 2016, Dr. Means asserts his opinion, within a reasonable degree of medical and chiropractic probability, that Plaintiff will incur chiropractic and medical expenses in the future. (Doc. #68 at 4-5). The Court finds that Plaintiff has adduced sufficient evidence to survive Defendant's motion for

---

[3] Defendant advises that Plaintiff's disclosure of expert opinions identifies Dr. Means as an expert (Doc. #59), but that Plaintiff has not provided any report or opinion of Dr. Means, or any of the other named experts.

summary judgment. Accordingly, the Court denies Defendant's motion as it relates to future medical expenses.

## C. Pain and suffering

Finally, Defendant argues that Plaintiff has not met his burden of proof as to a permanent injury, which is a prerequisite to recover pain and suffering damages. (Doc. #65 at 9-10). Under Florida law, "the legal liability of an uninsured motorist coverage insurer does not include damages in tort for pain, suffering, mental anguish, and inconvenience," unless the injury consists of (a) significant and permanent loss of an important bodily function; (b) permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement; (c) significant and permanent scarring and disfigurement; or (d) death. Fla. Stat. § 627.737(2)(a)-(d); *see also Wiggins v. Allstate Prop. & Cas. Ins. Co.*, 94 F. Supp. 3d 1276, 1282 (S.D. Fla. 2015). Here, Defendant incorporated § 627.737(2) into the applicable insurance policy. (Doc. #65-1). Therefore, unless Plaintiff has suffered permanent injury within a reasonable degree of medical probability, he may not recover noneconomic damages for pain and suffering.

"[D]eterminations about the permanency of an injury are generally made by juries." *Wald v. Grainger*, 64 So. 3d 1201, 1204 (Fla. 2011) (citation omitted). A plaintiff establishes a prima facie case of permanency by presenting expert testimony. *See id.* The burden then "shifts to the defendant to present countervailing expert testimony" or "other evidence that creates a direct conflict with the plaintiff's evidence." *Id.* (citation omitted). "If the defendant succeeds in this endeavor, a jury question is presented[.]" *Id. at 1205*.

In Dr. Means' letter dated December 13, 2011, he concluded that, based on "[h]istory, examination findings, x-ray findings, and observations made during our course of care . . . [Plaintiff] has sustained a permanent injury directly as a result of his June 8, 2011 automobile related accident.  Because of this, he will continue to have increased problems in the involved areas."  (Doc. #65-1 at 115).  Dr. Means' subsequent affidavit reiterated his opinion about the permanency of Plaintiff's injuries.  (Doc. #68 at 4-5).

Dr. Means' opinion, however, does not stand alone.  In fact, it conflicts with the opinion of Dr. John R. Cassidy, who performed a compulsory medical examination on Plaintiff on April 16, 2015.  (Doc. #65 at 118-21).  According to Dr. Cassidy, the accident "has not affected [Plaintiff's] chronic pain syndrome at all.  As it relates to the collision, he is at Maximum Medical Improvement.  His Partial Permanent Impairment at zero.  He can resume all of his usual activities, both recreationally and vocationally, without restriction.  No further surgery is necessary."  (Doc. #65-1 at 121).

Because Dr. Cassidy and Dr. Means offer conflicting opinions that bear directly on the issue of permanency, the Court faces a genuine issue of material facts that cannot be resolved through summary judgment.  Accordingly, Defendant's motion for summary judgment is denied as to damages for pain and suffering.

Accordingly, it is now **ORDERED:**

Defendant's Amended Motion for Summary Judgment (Doc. #65) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida this 15th day of April, 2016.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record